NOT DESIGNATED FOR PUBLICATION

No. 120,229

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOHNNIE O. TAYLOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; WESLEY K. GRIFFIN, judge. Opinion filed August 30, 2019. Affirmed.

*James L. Spies*, of The Law Office of James L. Spies, P.A., of Kansas City, for appellant.

*Christopher L. Schneider*, assistant district attorney, *Mark A. Dupree Sr.*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BUSER, P.J., GREEN and MALONE, JJ.

PER CURIAM: Johnnie Taylor was found not guilty by reason of mental disease or defect on the charges of rape and aggravated sodomy in 1996. Since then, Taylor has been committed to a State hospital. In 2018, Taylor filed a request for conditional release, but the trial court denied the request after a hearing where the State presented evidence that he was still mentally ill. On appeal, Taylor contends that the trial court erred in denying his request for conditional release. We disagree. Accordingly, we affirm.

1

In 1996, Taylor was charged with rape under K.S.A. 21-3502 (Furse 1995) and aggravated criminal sodomy under K.S.A. 21-3506 (Furse 1995). The trial court ruled Taylor not guilty by reason of mental disease or defect and committed him to the State Security Hospital for treatment. Taylor was eventually transferred to Osawatomie State Hospital in 2006 where he remains.

In May 2018, Taylor submitted a request for his annual conditional release hearing. Under K.S.A. 2018 Supp. 22-3428a, Dr. Maria M. Gustilo, the Chief Medical Officer of Osawatomie State Hospital performed a forensic evaluation and submitted a report with her findings which was admitted as part of the record.

The report noted that since December 2006, Taylor has been in a lesser restrictive environment and the interdisciplinary team was supportive of his request for conditional release. Nevertheless, the interdisciplinary team withdrew its support for conditional release after Taylor became aggressive towards staff. The report also noted that throughout Taylor's hospitalization history, he expressed concern about and ambivalence to taking medications on the belief that physicians have killed and are trying to kill patients—although he has not refused medications since January 2018. Taylor also continues to "present with a significantly elevated affect including grandiose and paranoid thinking as well as fixed delusions regarding his relationships and life prior to hospitalization."

The report notes that although Taylor is pleasant and cooperative when discussing aspects of his life that are going well, he becomes verbally hostile when requested to comply with medical treatments, monitoring, or interactions with staff and peers. Taylor refuses to accept responsibility for his behaviors and denied his participation in prohibited activities such as bullying, trading items, and being involved in altercations. Taylor has been diagnosed with schizophrenia, antisocial personality disorder, as well as other medical diagnoses, but denies having any diseases.

Further, the report stated that Taylor has had good attendance with group therapy and activities, but he either participates superficially, does not participate at all, or requests to be removed from the group. Nevertheless, Taylor has continued to struggle with working with physicians which demonstrates poor insight into his illness and guardedness. Taylor continues to display many of the same symptoms that were observed when he was first committed. Taylor also has difficulty cooperating with treatment in a less structured setting.

Within the last year, Taylor has continued to present paranoid ideation with respect to his peers and staff. During one incident, Taylor trapped a social worker in a corner in an attempt to speak with her without a scheduled meeting. Taylor had to be separated from the social worker by security and Taylor then refused to take responsibility for his actions. Although Taylor has not had any behavioral issues since June 2018, Taylor made false accusations toward peers that a female peer had raped him twice. Taylor reported the female peer had a knife and threatened to cut off his genitals unless he had sex with her.

The report ultimately recommended that Taylor remain at Osawatomie State Hospital because he continues to pose a potential danger to himself and others. Although there have been improvements in Taylor's treatment compliance, he was recently switched back to a more restrictive unit. Taylor continues to have poor insight into his mental illness and physical needs. Taylor struggles with maintaining healthy boundaries with others and has stated delusional and false beliefs many times since.

Taylor testified at the conditional release hearing and stated he has been complying with the hospital programs and conducts himself like a gentleman. Taylor stated that he takes his medication, goes to group classes, works a job, and does not

bother anyone. Taylor testified that he has insurance, has a place to stay, has some money, and will look for a job as soon as he is released.

The trial court stated it must find by clear and convincing evidence that Taylor is not mentally ill in order to release him from the hospital. The trial court denied Taylor's request stating that it agreed with the Osawatomie State Hospital report contending that he not be recommended for conditional release because he poses a potential danger to himself and others. The trial judge stated, "While I firmly believe, as I did last time, that he is doing better, I have to concur with the ultimate result of the staff at Osawatomie that he is still suffering from certain mental illness." Taylor timely appealed to this court.

*Did the Trial Court Err in Denying Taylor's Request for Conditional Release?*

Our standard of review provides:

> "'The decision of whether to discharge a patient is discretionary with the trial court. In exercising that discretion, the trial court must consider whether 'any proposed conditions of discharge would truly accomplish their purpose; that is, to safeguard the patient and the public. If the court determines adequate safeguards are not present, then the patient should not be discharged.'" *State v. Davis*, No. 111,844, 2015 WL 4879116, at *1 (Kan. App. 2015) (unpublished opinion) (quoting *In re Noel*, 226 Kan. 536, 553, 601 P.2d 1152 [1979]).

The relevant statute here provides that committed persons confined under K.S.A. 2018 Supp. 22-3428a(1) are entitled to request an annual hearing to determine whether he or she continues to be mentally ill. At the hearing, the committed person has the right to present evidence and cross-examine witnesses. The trial court shall receive all relevant evidence, including written findings and recommendations of the chief medical officer of the State hospital. At the hearing, "if the court finds by clear and convincing evidence the committed person is not a mentally ill person, the court shall order the person discharged;

4

otherwise, the person shall remain committed or be conditionally released." K.S.A. 2018 Supp. 22-3428a(3).

K.S.A. 2018 Supp. 22-3428(7)(b) defines mentally ill as follows:

"'Mentally ill person' means any person who:
(A) Is suffering from a severe mental disorder to the extent that such person is in need of treatment; and
(B) is likely to cause harm to self or others."

Under this statute, likely to cause harm to self or others means that "the person is likely, in the reasonably foreseeable future, to cause substantial physical injury or physical abuse to self or others or substantial damage to another's property, or evidenced by behavior causing, attempting or threatening such injury, abuse or neglect." K.S.A. 2018 Supp. 22-3428a(7)(a).

On appeal, Taylor contends that there was insufficient evidence to deny his request for conditional release. More specifically, Taylor argues that the State had the burden of proof to show that he is both mentally ill and is likely to cause harm to self or others, but the State proved neither. Taylor argues that the State failed to present any evidence at the annual review hearing because he was the only testifying witness. Taylor asserts that although the report included statements regarding his aggression, those acts were outdated and lacked factual details. In contrast, the State contends that it met its burden because Taylor has recently been moved to a more restrictive area and has not changed his behavior.

It is important to note that although Taylor's written request stated he was asking for conditional release, he requested full discharge at the hearing. The trial court denied Taylor's request for both dispositions. Regardless, as the statute delineates, the trial court

5

needed to determine whether Taylor was mentally ill and a harm to himself or others in order to discharge him or place him on conditional release. The trial court's decision to deny Taylor's release is supported by the record as discussed below.

The State submitted a report from the Osawatomie State Hospital which stated Taylor has been diagnosed with schizophrenia and antipersonality disorder. The report also states that these illnesses require medication and therapy. Taylor did not deny that he did not have these illnesses at the hearing, Taylor only explained to the court that he has been complying with the program and was ready to go home. Although the report states that Taylor has not refused to take any of his medication since January 2018, the report also states that Taylor only participates in therapy on the surface and sometimes requests to leave the sessions. The report also noted that Taylor has poor insight into his mental illness and physical needs and refuses to accept that he has any illnesses or that he needs treatment for them. Even though the report stated that Taylor has improved in the area of taking his medication, he still presents with a "significantly elevated affect including grandiose and paranoid thinking as well as fixed delusions regarding his relationships and life prior to hospitalization."

As the statute explains, the trial court must consider all evidence, including the written findings of the State hospital. The trial court judge stated that although he thought Taylor was getting better, he concurred with the report that Taylor is still suffering from a mental illness. In accordance with the statutory definition, the record supports a finding that Taylor is still mentally ill.

The trial court must also find that Taylor poses a harm to himself or others. At the hearing, Taylor did not explicitly deny any of the specific incidents in the report, but he stated that he would continue to comply with his group treatments, take his medication, and continue to conduct himself as a gentleman on the public streets. Taylor also stated that he can be trusted in the community. Taylor testified that he has an associates degree,

6

insurance, money, a place to stay, and would look for a job immediately. Taylor further stated that he minds his own business and does not bother anyone. Nevertheless, Taylor's assertions are contradicted by the report.

The report details numerous incidents where Taylor has been aggressive towards staff and other patients. In addition, the report notes that Taylor has difficulty accepting the existence of his mental illnesses. Taylor argues that many of his aggressive incidents were outdated; however, the report stated that Taylor has had many conflicts with staff within the last two years. The report stated that Taylor's interactions with others are conflictual in nature. For example, he refuses to accept responsibility for his actions, blames others, and is unable to maintain healthy boundaries with others. The report further provides that Taylor has delusions and makes false accusations. Within the last two years, Taylor was removed from a less restrictive environment to a more restrictive environment because of his aggressive behavior towards staff. In January 2016, Taylor made references to a woman deserving to be raped in regards to a female patient. Other incidents involved Taylor punching another patient. Taylor has made false rape accusations against a female patient on two occasions. In April 2018, Taylor trapped a social worker into a corner and stated that she would be in big trouble if he was not released—security had to physically separate Taylor from the social worker. When Taylor was asked about this incident later, Taylor refused to accept responsibility for his actions and told others that his own safety was being threatened.

Although Taylor points out that the report largely ignores his recent improvements in attending group therapy, he does not address his participation in those sessions. While the report states that Taylor has up to a 95% attendance rate, it also notes that Taylor participates superficially or refuses to participate at all. On many occasions, Taylor asks to leave the session or requests fewer treatment sessions. Despite medication, Taylor becomes verbally hostile with staff and peers when asked to comply with treatments, monitoring, or interacting with others. The trial court adopted the report's findings that

7

Taylor poses a danger to himself and others. Thus, there is evidence in the record to show that Taylor would pose a harm to himself or others upon release.

Taylor's case is similar to *Davis*. In *Davis*, the defendant requested conditional release, but the report suggested otherwise. The report stated that the defendant was not successful in the less restrictive environment because he was resistant to caring for his medical conditions. The defendant expressed a belief that he was being poisoned and mentioned hearing voices. At the hearing, the defendant said he was often upset because "'the system has done me so wrong in the past.'" 2015 WL 4879116, at *2. Davis denied any wrongdoing and suggested that the problem was with "'the system.'" One doctor opined that the defendant "still deals with impulsivity, anger problems, and poor insight into his illness. Specifically, Davis denied committing any crime and thought he was being held at Osawatomie 'for no reason.'" 2015 WL 4879116, at *3. The doctors expressed concern that the defendant would not continue to take his medication if he was released. The trial court held the defendant was unwilling to address his medical condition and had ongoing concerns regarding whether the defendant would remain compliant with taking his medication. For these reasons, the trial court ruled there was clear and convincing evidence that the defendant was a threat to himself. The *Davis* court upheld the trial court's ruling. 2015 WL 4879116, at *3-4.

The *Davis* case involved testimony at the hearing from multiple doctors in addition to submitting the report as evidence. Nevertheless, like *Davis*, Taylor has a long history of denying any wrongdoing. Taylor also has a history of refusing to take his medication because of a belief that the physicians are trying to kill him. Even on medication, Taylor continues to exhibit significantly elevated affect, including grandiose and paranoid thinking, as well as fixed delusions. Although Taylor stated he would continue to take his medicine if released, the report reflects that Taylor has trouble adjusting to nonstructured environments and becomes verbally abusive when asked to comply with his treatment.

8

In conclusion, the trial court adopted the findings in the report and agreed that Taylor remains a mentally ill person. Thus, there is support for the trial court's finding that Taylor remains a mentally ill person. In accordance with the statute, Taylor may not be fully discharged and the trial court did not abuse its discretion in denying his request for conditional release or discharge.

Affirmed.